# EXHIBIT A

COPY OF THE ORIGINAL
FILED IN 57TH CIRCUIT
COURT ON 10-3-24

STATE OF MICHIGAN
IN THE EMMETT COUNTY CIRCUIT COURT

PATRICIA DOSS,

       Plaintiff,

-vs-

BENTLEY ACQUISITION, LLC,
BENTLEY INDUSTRIES, LLC,
STEVE DEESE f/ka/ ENCORE BOAT
BUILDERS, LLC, RICK GORNEY, and
ANGELA ROSE, LLC

       Defendants.

Case No. 24-108344-
NP
Hon. Jennifer Deegan

MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Attorneys for Plaintiff
220 W Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7529 / F: (313) 470-2011
michael@markolaw.com

KEVIN M. MULVANEY (P76915)
KURT J. PARKER, JR (P81253)
WILSON, ELSER, MOSKOWTIZ,
EDELMAN & DICKER, LLP
Attorneys for Defendant Bentley Acquisition,
LLC
17197 N Laurel Park Drive, Suite 201
Livonia, MI 48152
(313) 327-3100 / (313) 327-3101 (Fax)
Kevin.mulvaney@wilsonelser.com
Kurt.parkerjr@wilsonelser.com

DANIEL J. SCULLY, JR. (P36530)
ANTHONY A. AGOSTA (P5735)
**CLARK HILL PLC**
Attorneys for Bentley Acquisition, LLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
(313) 965-8300
dscully@clarkhill.com
aagosta@clarkhill.com

JOHN T. LAY, JR.
WILLIAM P. MAURIDES
**GALLIVAN, WHITE & BOYD, P.A.**
Attorneys for Steeve Deese f/k/a Encore
Boat Builders, LLC
1201 Main Street, Suite 1200
Columbia, SC 29201
(803) 779-1833

THOMAS H. SPARROW (P56262)
Attorney for Angela Rose, LLC
160 Falling Leaf Drive
Lapeer, MI 48446
(810) 338-0429
Ths92110@yahoo.com

## AMENDED COMPLAINT

Plaintiff, PATRICIA DOSS, by and through her attorneys, MARKO LAW, PLLC, states the following for her Complaint against Defendants.:

## JURISDICTION AND VENUE

1.    Plaintiff Patricia Doss is a resident of Pellston, State of Michigan, in the County of Emmett.

2.    Defendant Bentley Acquisition, LLC (hereinafter "Bentley") is headquartered at 1650 Two Notch Road in Lexington, South Carolina.

3.    Defendant Bentley Industries, LLC was a corporation organized and existing under the laws of South Carolina, with it principal place of business at 1650 Two Notch Road, Lexington, South Carolina. Defendant designed, manufactured, assembled, distributed, marketed, and sold pontoon boats, including the pontoon boat involved in this incident, throughout the United States, including the State of Michigan.

4.    Defendant Angela Rose, LLC (herein after Marooners' Rock) does business as Marooners' Rock Marina and is headquartered at 7782 Lagoon Drive in Alanson, Michigan in the County of Emmett.

5.    Defendant Rick Gorney, upon information and belief, resides in the County of Emmett, State of Michigan.

6.    This Court has jurisdiction over Defendants because Defendant Angela Rose, LLC conducts business in this state and owns real property in the County of Emmett.

7.    MCL 600.1629 states, in pertinent part, the county in which to file and try an action based on tort is the county in which the original injury and the plaintiff resides.

8.    The amount in controversy far exceeds this Court's jurisdictional requirement.

## COMMON ALLEGATIONS

9.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

10.    Defendant Bentley was founded in 2002.

11.    Bentley is the manufacturer of 2006 watercraft, referred to as "Pontoon Boat;" hull # BNT24260J506, which was sold under the name Bentley.

12.    The subject boat included a defective railing/swinging gate design: The outer rail and attached swinging gage, which passengers were intended to and do use to enter and exit the deck of the boat, contained symmetric convex portions on either side of the gate, creating a downward sloping, gradually narrowing area in which fingers and be and are easily entrapped. The downward slope of the railing near the downward slope of the gate also facilitates or "funnels" the movement of the hand into this pinch-point, resulting in a significant risk for avulsion-type finger amputation, typically involving the fifth digit, as would-swimmers jump from the boat into the water.

13.    Since the introduction of this and similar designs by Defendant Bentley and other pontoon boat manufacturers, and for many years prior to the incident involving Plaintiff Patricia Doss, Defendant Bentley has been repeatedly placed on notice and sued concerning the entrapment defect.

14.    In or around 2017, Bentley Acquisition, LLC bought Encore Boat Builders, which conducted business as Bentley Pontoon.

MARKOLAW.COM

1300 BROADWAY ST.; 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

15.   Bentley Acquisition LLC continued to build boats under the Bently Pontoon brand.

16.   Dennis Marcott and Mike Scott own Bentley Acquisition LLC.

17.   Ryan Marcott, who worked for Encore Boat Builders, became the president of Bentley Pontoon and was responsible for daily operations.

18.   Bentley Acquisition LLC continued to build Bentley Pontoon boats in the same facility with the same personnel.

19.   Pontoon boat manufacturers, including Defendant Bentley, have long recognized the hazard posed by the entrapment defect and have issued multiple recalls. Defendant issued a recall in 2004 acknowledging the danger created by the entrapment defect.

20.   Defendant Bentley admits the boats had a safety risk associated with Bentley's design of it's railings and gates.

21.   The design allowed for a person's finger(s) to lodge between the points where a railing and gate met.

22.   The probability of this occurring was greatest when entering into or exiting from the water.

23.   Known injuries included dismemberment.

24.   To make matters worse, Bentley designed and developed a defective finger pinch guard that attached to the right and left-hand side of each gate.

**(Finger Pinch Guard)**

25.    Defendant Angela Rose, LLC owns and operates Marooners' Rock Marina.

26.    Marooners' Rock is located on the Crooked River, between the Swing Bridge and the Locks.

27.    Marooners' Rock is in the business of renting pontoon boats.

28.    Defendant Angela Rose, LLC owned the subject pontoon boat.



Page 5 of 26

29.    Defendant Rick Gorney claims he owned the boat. Upon information and belief, Defendants Angela Rose, LLC and Rick Gorney were in business together.

30.    Defendant Angela Rose, LLC charges $350 for a full day pontoon rental; $110 per hour; or $1,600 for a six-day rental.

31.    On or about Friday, June 30, 2023, Patricia Doss called Marooners' Rock Marina at (231) 373-2265, Alanson, Michigan and spoke with owner Angla Papi to inquire about renting a Bently pontoon boat from her marina.

06/30/2023 10:58:25 AM        (231) 373-2265        PETOSKEY        SPDV        6

**Plaintiff's Call Log**

32.    On Saturday, July 1, 2023, Ms. Doss texted Angela Papi asking if she could extend the rental until Monday and how much more would Defendant Angela Rose, LLC charge.

33.    Defendant responded, "Yes. Monday is fine. $300."



34.    This was Ms. Doss' first time on a Bentley pontoon boat.

**(2006 Bentley Pontoon boat rented to Patricia Doss)**

35.     On Saturday, July 1, 2023, after Angela Papi provided keys, life jackets, and fueled the boat, Michael Doss (Patricia's husband) took possession of the boat at the marina and drove it on the Crooked River to Burt Lake, an inland lake in Northern Michigan.

36.     Along with Michael, Patricia Doss, and Tammy Latva (Patricia's sister) were on the Bentley pontoon boat.

37.     Kristina Doss (Plaintiff's sister-in-law), along with Brian Latva were on a pontoon boat next to Patricia Doss' group.

38.     They all went to the Sand Bar.

39.     They exited the front of the boat into shallow water.

40.     Patricia Doss sat in the open doorway at the front of the boat as she was beginning to exit the boat.

41.     The door opened inward and swung to the port side of the boat (left side when viewed from the back of the boat looking toward the front of the boat).

42.     As she began to exit, she placed her left hand behind her onto the top of the railing near the door hinge which has a curve in the railing down toward the door hinge.

43.     A finger pinch guard was mounted on the door.

44.     Since the door was open to allow Ms. Doss to exit the front of the boat, the ball guard swung away from the railing, exposing the dangerous pinch point between the door and railing.

45.     Ms. Doss slid of the boat and into the water.

46.     The downward velocity pulled her away from the boat.

MARKOLAW.COM

1300 BROADWAY ST., 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

47.     Her finger lodged between the point where the railing and gate met.

48.     Bentley's pontoon boat traumatically severed her pinkie from her hand.

49.     Her left ring finger was also pinched and cut in two places.

50.     The pain was unbearable.

51.     The severed, bleeding finger caused extreme fright and horror.

52.     Michael Doss, seeing his wife's left-hand bleeding profusely, was also struck with horror at the sight of Patricia's mangled fingers.



**(Patricia Doss' severed left pinkie finger and damaged right finger)**
**Photo taken by Pellston Fire Department at the scene**

53.     He wrapped her left hand with a towel, applying pressure to stem the flow of blood. He feared she would bleed to death.

54.     Multiple 9-1-1 calls were made by unknown persons.

55.     An unknown man and woman placed Patricia and her husband on their boat and transported them to Maple Bay.

56.     Around 1:03 PM, Pellston Fire Department personnel received a call regarding a severed finger at Maple Bay Road and Chickagami Trail (Call # 23156, Incident # 14582537).

57.     They arrived on scene around 1:27 PM.

58.     The first responders arrived at Maple Bay before Patricia.

59.     Upon Patricia's arrival at Maple Bay, a female first responder treated Patricia.

60.     She cleansed Patricia's hand with saline and a liquid that stung as it was applied.

61.     Patricia complained of severe pain in her hand.

62.     The distal part of her finger was moved back in-line and in close proximity to the proximal end of the separation.

63.     The two pieces were not put back together to help alleviate the potential of the bones rubbing together and creating more pain.

64.     The wound was covered with gauze.

65.     Patricia's hand and lower arm were placed in a soft moldable splint.

66.     The splint was secured to Patricia's hand and arm with gauze.

67.    Around 1:30 PM, Cheboygan Life Support Ambulance responded to a severed finger call at the Maple Bay Campground (Incident/Response #457523C).

68.    Cheboygan Life Support Ambulance personnel arrived and assumed care of Patricia.

69.    Patricia rated her pain 9/10.

70.    James Sturgill, paramedic, took over for Pellston Fire Department personnel and conducted an initial assessment.

71.    Adam Randle, an advanced emergency medical technician, placed an IV, provided two separate doses of Fentanyl for pain, and took other medical actions for Patricia.

72.    They transported Patricia to McLaren Northern Michigan Hospital Emergency Department in Petoskey, Michigan.

73.    On July 1, 2023, the day of the incident, Ms. Doss went to McLaren Northern Michigan Hospital where she was seen by Dr. Matthew Font.

74.    Ms. Doss reported to Dr. Font that she was experiencing pain in her left hand.

75.    In fact, Ms. Doss was experiencing pain in her left hand.

76.    Upon examination, Dr. Font found a near complete amputation of the finger. Evidence of fracture at some point in the proximal phalanx and the distal portion of the finger was attached with a small amount of soft tissue medially. Near the amputated finger was white, no cap refill or sensation. The fourth finger revealed a 1.5 cm laceration over the dorsal surface of the proximal phalanx and a 1.5 cm laceration over the palmar surface of the proximal phalanx.

77.     Dr. Font performed a digital block and removed the amputated finger.

78.     Dr. Font ordered an x-ray of the hand, which showed evidence of a distal proximal phalanx fracture of the fifth finger.



**(X-ray image of Patrica's left hand)**

79.     Ms. Doss' left hand fourth finger wound was sutured. Dr. Font then used some suture scissors to clip off the amputated finger.



**(Patricia's amputated fifth finger and sutured fourth finger)**

80.    On July 3, 2023, Dr. Patrick O'Callaghan of Bay Street Orthopedics, Petoskey, Michigan, performed surgical revision amputation of Ms. Doss' left fifth digit.

81.    The amputation surgery was performed at Northern Michigan Surgical Suites, Boyne City, Michigan.

82.    The proximal phalanx was exposed through the wound.

83.    The wound edges could not be primarily closed.

84.    A curvilinear incision was used to create a partial flap that could be rotated distally.

85.    The extensor and flexor tendons were both missing, likely avulsed.

86.    Digital arteries were cauterized.

87.    Digital nerves were pulled through the wound and cut deep.

88.    Dissection was carried further around the proximal phalanx and the MCP joint identified.

89.    Collateral ligaments were sharply released, and the bone was removed.

90.    The wound was sutured and cleansed.

 

91.    Ms. Doss then underwent therapy.

92.    Ms. Doss was 50 years old at the time of this incident.

93.    The Center for Disease Control, Life Tables is a government publication that is self-authenticating. It states on the last page: "This document is hereby certified as an official federal document and is fully admissible as evidence in federal court. Under Federal Rules of Evidence 902: "Self-authentication" (Fed. R. Evid 902), no extrinsic evidence of authenticity, that is, seal or stamp, is required as a condition for admissibility of this document as evidence in court.

94.    Michigan Rules of Evidence 902 is identical to FRE 902.

95.    Ms. Doss is expected to live another 31.6 years.

96.    As a result of Defendants' negligence, Plaintiff has suffered and will continue to suffer for the next 31.6 years:

    a.    Physical pain;

b.      Suffering;

c.      Mental anguish;

d.      Fright;

e.      Shock;

f.      Denial of social pleasure;

g.      Denial of social enjoyments;

h.      Embarrassment;

i.      Humiliation;

j.      Mortification;

k.      Post traumatic stress;

l.      Disability;

m.      Disfigurement;

n.      Medical expenses;

o.      Loss of earning capacity – past and future;

## SUCCESSOR LIABILITY

97.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

98.     Defendant Steve Deese f/k/a Encore Boat Builders and Bentley Acquisitions, LLC are liable for the defective design, manufacture, and sale of the pontoon boat under the doctrine of successor liability because.

a.  Defendant expressly or impliedly agreed to assume the liabilities of Bentley Industries, LLC;

b.  The transaction between Defendants Encore Boat Builders and Bentley Industries, LLC was a de facto merger or consolidation of the companies;

c.  The transaction between Defendants Encore Boat Builders and Bently Acquisitions, LLC was a de facto merger or consolidation of the companies;

d.  Defendant Bentley Acquistion, LLC is a mere continuation of Bentley Industries, LLC, as evidence by the continuity of management, personnel, location, products, and operations; and/or

e.  The transaction between Defendant Encore Boat Builders and Bentley Acquisition, LLC was fraudulently entered into to escape liability for defective products sold by Bentley Industries, LLC.

99.    Defendants Encore Boat Builders and Bentley Acquisitions, LLC assumed the liabilities of Bentley Industries, LLC and continued to benefit from the sale of Bentley pontoon boats, including those with the same defective design as the one the caused Plaintiff's injuries.

100.    As the successor in interest to Bentley Industries, LLC, Defendants are responsible for all product liability claims arising from defects in the pontoon boat, including Plaintiff's claims.

<u>COUNT I</u>
Negligence
**(As to all Defendants)**

101.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

102.   Defendants owed a duty to Plaintiff to ensure that the pontoon boat was safe and fit for its intended use, and to repair or warn of any known defects that could pose a danger to users.

103.   Defendants breached this duty by:

a.   Failing to repair the defect in the railings and gate of the pontoon boat despite having actual or constructive knowledge of its dangerous condition;

b.   Failing to warn Plaintiff and other users of the dangerous defect;

c.   Allowing the pontoon boat to be used in a defective condition, which posed a foreseeable risk of harm to users;

d.   Failing to properly design the gate and safety rail system to eliminate hazardous pinch points;

e.   Failing to properly manufacture the gate and safety rail system to eliminate hazardous pinch points;

f.   Failing to properly and adequately guard the pinch points caused by the design of the gate and safety rail system;

g.   Failing to properly install the gate and safety rail system to eliminate hazardous pinch points;

h.   Failing to provide adequate warnings about the hazardous pinch points;

i.   Failing to provide adequate warnings and adequate guarding kits to the dealers and ultimate users of Defendant's boats after noticing potential finger injuries;

j.   Failing to provide adequate instructions on avoiding injury from the hazardous pinch points;

k.   Failing to use appropriate materials to adequately guard the pinch points caused by the design of the gate and safety rail system;

MARKOLAW.COM

1300 BROADWAY ST., 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

l.   Failing to test and inspect the gate and rail system to identify potential hazardous pinch points;

m.   Failing to exercise the degree of care which a reasonable prudent person would have exercised under the same circumstances.

n.   "Producing", assembling, specifying, designing and/or manufacturing a vehicle that contained manufacturing, installation, assembly, design and/or "production" defects that caused the pontoon boat to have unreasonably dangerous pinch points.

o.   Negligently failing to adequately test and failing to use adequate quality control procedures to alert it to manufacturing and/or "production" defects within the pontoon boat.

p.   Other acts of negligence may become known through the course.

104.   All of which combined and concurred as a direct and proximate cause of the injuries and damages suffered by the Plaintiff herein.

<u>COUNT II</u>
**STRICT LIABILITY**
**Design Defect**
**(As to Bentley Acquisition, LLC; Bentley Industries, LLC; and Steve Deese f/k/a Encore Boat Builders, LLC)**

105.   Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

106.   Defendant Bentley Industries, LLC placed the pontoon boat into the stream of commerce, it was defectively designed in that the design of the railings and gates was unreasonably dangerous and posed a substantial risk of injury to users, including Plaintiff.

107.   The design defect existed at the time the pontoon boat left Defendant's control and was a proximate cause of Plaintiff's injuries.

108.    A safer alternative design was available at the time the boat was manufactured, which would have prevented or significantly reduced the risk of injury without substantially impairing the boat's utility or increasing the cost.

109.    Defendants Bentley Acquisition, LLC and Steve Deese f/ka/ Encore Boat Builders, LLC, as successor in interest is liable for the defect.

110.    As a direct, proximate and foreseeable result of the defects in the subject boat and/or the unreasonably dangerous condition that were present on it, Plaintiff suffered those injuries stated herein.

<u>**COUNT III**</u>
**STRICT LIABILITY**
**Manufacturing Defect**
**(As to Bentley Acquisition, LLC; Bentley Industries, LLC; and**
**Steve Deese f/k/a Encore Boat Builders, LLC)**

111.    Plaintiff incorporates by reference paragraphs above as if set forth fully herein.

112.    The pontoon boat was defectively manufactured in that it deviated from the intended design specifications, rendering it unreasonably dangerous and hazardous to users, including Plaintiff.

113.    The manufacturing defect existed at the time the pontoon boat left Defendant's control and was a proximate cause of Plaintiff's injuries.

114.    Defendants Bentley Acquisition, LLC and Steve Deese f/k/a Encore Boat Builders, LLC, as successor in interest is liable for the defect.

115.    As a direct and proximate result of the manufacturing defect, Plaintiff suffered injuries and damages described herein.

## COUNT IV
### Breach of Implied Warranty of Merchantability
### (As to Angela Rose, LLC and Rick Gorney)

116.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

117.    At the time of Defendants rented the pontoon boat to Plaintiff, Defendants were in the business of leasing, selling, or otherwise providing pontoon boats to the public for recreational use.

118.    An implied warranty of merchantability under MCL 440.2314 existed at the time the pontoon boat was rented by Defendants to Plaintiff.

119.    Under MCL 440.2314, Defendant warranted that the pontoon boat was fit for the ordinary purposes for which such boats are used, and that it was safe for use by ordinary consumers, including Plaintiff.

120.    The pontoon boat rented to Plaintiff was defective and unreasonably dangerous for its intended purpose because of the defect in the railings and gate that caused Plaintiff's finger to be amputated.

121.    The pontoon boat was not fit for its ordinary purpose of recreational boating, in violation of the implied warranty of merchantability, due to the dangerous condition that resulted in Plaintiff's injury.

122.    As a direct and proximate result of Defendant's breach or the implied warranty of merchantability, Plaintiff suffered severe injuries, including amputation of her fingers, pain and suffering, mental anguish, medical expenses, and other damages.

## COUNT V
### Breach of Implied Warranty of Fitness for Particular Purpose
### (As to Angela Rose, LLC and Rick Gorney)

123.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

124.    Defendants, at the time of the rental, knew or had reason to know that Plaintiff intended to use the pontoon boat for recreational boating and that Plaintiff was relying on Defendants' skill and judgment to provide a boat that was fit for that purpose.

125.    Defendants rented the pontoon boat to Plaintiff with an implied warranty under MCL 440.2315 that the boat was fit for Plaintiff's particular purpose of recreational boating.

126.    The pontoon boat was not fit for the particular purpose for which it was rented because it was defective and unreasonably dangerous, and it caused the injury described herein.

127.    Plaintiff relied on Defendants' skill and judgment in selecting the pontoon boat, and Defendants failed to provide a boat that was safe and fit for the intended purpose.

128.    As a direct and proximate result of Defendants' breach of the implied warranty for a particular purpose, Plaintiff suffered severe injuries, including the amputation of fingers, pain and suffering, emotional distress, medical expenses, and other damages.

## COUNT VI
### Gross Negligence
### (As to all Defendants)

129.    Plaintiff restates the above paragraphs as if fully set forth herein.

130.    The Bentley pontoon boat was defective at the time it was "produced" and "sold".

131.    Defendants had actual knowledge of the defect and of the substantial likelihood that the defect(s) would cause Plaintiff injuries.

132.    Defendants willfully disregarded that knowledge.

133.    Defendants' conduct in allowing the pontoon boat to be used with a known defect, without taking steps to repair or warn of the danger, constitutes gross negligence.

134.    Defendants acted with reckless disregard for the safety of Plaintiff and other users by ignoring the known risk associated with the defect in the pontoon boat.

135.    That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendants and actual knowledge, Plaintiff sustained severe injuries, pain and suffering, emotional distress, shock to the nervous system and mental anguish.

## COUNT VII
### Product Liability
### Failure to Warn
### (As to all Defendants)

136.    Plaintiff restates the above paragraphs as if fully set forth herein.

137.    Defendants knew of or should have known of the risk of injury with respect to the foreseeable use and/or misuse of its product.

138.    Defendants, including Bentley Acquisition, LLC and Steve Deese f/k/a Encore Boat Builders as successors had a duty to provide adequate warnings and instructions  regarding the risks associated with the railings and gate.

139.    Defendants did not provide effective communication of adequate, accurate information essential to the safe use of the product.

140.    As a direct and proximate consequence of Defendants' failure to warn and/or inadequate warning, Plaintiff sustained severe injuries, pain and suffering, emotional distress, shock to the nervous system and mental anguish.

<u>COUNT VIII</u>
Negligent Maintenance
(As to Angela Rose, LLC and Rick Gorney)

141.    Plaintiff restates the above paragraphs as if fully set forth herein.

142.    The subject boat was serviced by Defendant Marooners' Rock.

143.    Defendant Marooners' Rock negligently maintained the pontoon boat in that it failed to exercise reasonable care to prevent an unreasonable risk of harm to a person who might reasonably be expected to use the subject pontoon boat in an expected or reasonably foreseeable manner in one or more of the following ways:

    a.    An employee or agent failed to identify or correct the risk of harm and/or warn Plaintiff of the risk of injury or death.

    b.    Other acts of negligence that may become known through the course of discovery.

144.    Defendant Marooners' Rock owed Plaintiff a duty of reasonable care in maintaining the subject pontoon boat.

145.    Defendant breached their duty of reasonable care when they improperly maintained the subject pontoon boat resulting in severe injury to Plaintiff while the subject pontoon boat was used in a foreseeable manner.

MARKOLAW.COM

1300 BROADWAY ST., 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

Ⓜ MARKO LAW

146.   That as a direct and proximate consequence of the negligent or grossly negligent acts and/or omissions of the Defendant, Plaintiff sustained severe injuries, pain and suffering, emotional distress, shock to the nervous system and mental anguish.

## COUNT IX
### Breach of Express Warranty
### (As to all Defendants)

147.   Plaintiff incorporates by reference the paragraphs above as if set forth fully herein.

148.   Defendants expressly warranted through written and oral representations, advertisements, and marketing materials, that the pontoon boat was safe, free from defects and fit for its intended purpose.

149.   Plaintiff relied on these express warranties in deciding whether to use the pontoon boat.

150.   The pontoon boat, however, was defective in its design, manufacture, and/or material, particularly in the railings and gate, making it unreasonably dangerous for its intended use.

151.   Defendant's pontoon boat did not conform to the express warranties provided by Defendants, as it was not free from defects and was not safe for recreational boating.

152.   Defendant failed to repair or replace the defective pontoon boat or otherwise remedy the dangerous condition, despite the existence of the defect during the warranty period and Defendant's knowledge of the defect.

153.   As a direct, proximate, and foreseeable result of Defendants' breach of expressed warranty, Plaintiff suffered the damages stated herein.

MARKOLAW.COM

1300 BROADWAY ST., 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

<u>COUNT X</u>
Violation of Michigan Consumers Protection Act
(As to all Defendants)

154.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

155.    Defendants knew or reasonably should have known that the subject boat was defective prior to the product being placed into the stream of commerce. Alternatively, Defendants came into knowledge of the defects and dangers posed by the foreseeable use of the subject boat after the product was placed into the stream of commerce, yet Defendant did nothing to warn Plaintiff or others similarly situated of the known dangers.

156.    In addition, or in the alternative foregoing, Defendant failed to retrofit the subject watercraft with reasonable safety devise to eliminate the entrapment defect.

157.    The placement of the subject boat into the stream of commerce was a "consumer transaction" and, therefore, subject to the protection of the Michigan Consumer Protection Act, which covers Plaintiff.

158.    Defendant concealed and/or failed to warn the public, including Plaintiff, that the subject watercraft was defective.

159.    Such concealment and/or failure to inform constitutes an unfair, unconscionable, or deceptive act or practice within the meaning of the Michigan Consumer Protection Act, MCL § 445.901 et seq.

160.    As a direct, proximate, and foreseeable result of Defendants' concealment and/or failure to inform and otherwise there was a breach stated herein, Plaintiff suffered those damages and injuries stated herein.

**WHEREFORE,** Plaintiff requests this Honorable Court make and enter a Judgment in her favor and against Defendants, in whatever amounts in excess of $1,000,000 to which he is found to be entitled together with punitive damages, interest, and attorney fees.

Respectfully submitted,

**MARKO LAW, PLLC**

*/s/ Michael L. Jones*
Michael L. Jones (P85223)
**MARKO LAW, PLLC**
220 W Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 470-2011
Email: michael@markolaw.com

Date:  October 1, 2024

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **October 1, 2024,** via:

☐ U.S. Mail          ☐ Fax
☐ Hand Delivered     ☐ Overnight Carrier
☐ Certified Mail     ☐ Other:  Mi-FILE Truefiling
☐ ECF System         ☒ Email

*/s/ Devynn Stepowski*